1  **GLANCY PRONGAY & MURRAY LLP**
   LIONEL Z. GLANCY (#134180)
2  ROBERT V. PRONGAY (#270796)
   LESLEY F. PORTNOY (#304851)
3  CHARLES H. LINEHAN (#307439 )
4  1925 Century Park East, Suite 2100
   Los Angeles, CA 90067
5  Telephone: (310) 201-9150
   Facsimile: (310) 201-9160
6  Email: info@glancylaw.com

7  *Counsel for Plaintiff*

8
                   **UNITED STATES DISTRICT COURT**
9                  **NORTHERN DISTRICT OF CALIFORNIA**

10

11 | BHUPENDRA V. SHAH, Individually and On Behalf of All Others Similarly Situated, | Case No.: |
12 | | |
13 | Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
14 | v. | |
15 | CHEGG, INC., and DANIEL ROSENSWEIG, | |
16 | | **JURY TRIAL DEMANDED** |
17 | Defendants. | |

Plaintiff Bhupendra V. Shah ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Chegg, Inc. ("Chegg" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Chegg; and (c) review of other publicly available information concerning Chegg.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that acquired Chegg securities between July 30, 2018 and September 25, 2018, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Chegg is a direct-to-student learning platform that provides educational materials and services to high school and college students.

3. On September 25, 2018, the Company reported that an unauthorized party had gained access on or around April 29, 2018 to approximately 40 million users' data, including username, email address, shipping address, and hashed Chegg password.

4. On this news, the Company's share price fell $3.91, or approximately 12%, to close at $28.42 per share on September 26, 2018, on unusually heavy trading volume.

5. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company lacked adequate security measures to protect users' data; (2) that the Company lacked the internal controls and procedures to detect unauthorized access to its systems and to its data; (3) that as a result, the Company would incur additional expenses and litigation risks; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline

in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

7.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this district.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

11.     Plaintiff Bhupendra V. Shah, as set forth in the accompanying certification, incorporated by reference herein, purchased Chegg securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Chegg is incorporated under the laws of Delaware with its principal executive offices located at 3990 Freedom Circle, Santa Clara, California 95054.  Chegg's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "CHGG."

13.     Defendant Daniel Rosensweig ("Rosensweig") was the Chief Executive Officer of the Company at all relevant times.

14. Defendant Rosensweig is also referred to hereinafter as the "Individual Defendant." Defendant Rosensweig because of his position with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of his position and access to material non-public information available to her, the Individual Defendant knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendant is liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

15. Chegg is a direct-to-student learning platform that provides educational materials and services to high school and college students.

### Materially False and Misleading Statements Issued During the Class Period

16. The Class Period begins on July 30, 2018. On that day, the Company published a press release announcing the second quarter 2018 financial results, stating in relevant part:

> "We had a great Q2; achieving 32% total revenue growth, driven by 38% year-over-year Chegg Services revenue growth and subscriber growth of 45%," said Dan Rosensweig, Chairman and CEO of Chegg, Inc. "We expanded our services, introduced the Chegg Math Solver subscription and, through the acquisition of StudyBlue, added flashcards, one of the most popular learning tools used by students around the world. We enter the fall semester with significant momentum, giving us confidence to once again raise our guidance for the year."

**Q2 2018 Highlights:**

- **Total Net Revenues** of $74.2 million, an increase of 32% year-over-year
- **Chegg Services Revenues** grew 38% year-over-year to $61.8 million, or 83% of total net revenues, compared to 79% in Q2 2017
- **Net Loss** was $3.9 million

- **Non-GAAP Net Income** was $15.5 million
- **Adjusted EBITDA** was $19.3 million
- **1.7 million**: number of Chegg Services subscribers, an increase of 45% year-over-year
- **158 million**: total Chegg Study content views, an increase of 62% year-over-year

17. The same day, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2018, reiterating the statements in the press release regarding the Company's financial results and continued success. Moreover, the report discussed the Company's vulnerability to unauthorized access to its systems and its data, stating in relevant part:

> ***Computer malware, viruses, hacking, phishing attacks and spamming could harm our business and results of operations.***
>
> Computer malware, viruses, physical or electronic break-ins and similar disruptions could lead to interruptions and delays in our services and operations and loss, misuse or theft of data. For instance, in December 2017, researchers identified significant CPU architecture vulnerabilities commonly known as "Spectre" and "Meltdown" that allow malicious programs to gain access to data. While chip makers and companies that provide widely used operating systems have released patches and updates, this process is still ongoing. Computer malware, viruses, computer hacking and phishing attacks against online networking platforms have become more prevalent and may occur on our systems in the future. We believe that we could be a target for such attacks because of the incidence of hacking among students.
>
> Any attempts by hackers to disrupt our website service or our internal systems, if successful, could harm our business, be expensive to remedy and damage our reputation or brand. Our network security business disruption insurance may not be sufficient to cover significant expenses and losses related to direct attacks on our website or internal systems. Efforts to prevent hackers from entering our computer systems are expensive to implement and may limit the functionality of our services. Though it is difficult to determine what, if any, harm may directly result from any specific interruption or attack, any failure to maintain performance, reliability, security and availability of our products and services and technical infrastructure may harm our reputation, brand and our ability to attract students to our website. Any significant disruption to our website or internal computer systems could result in a loss of students, colleges or brands and, particularly if disruptions occur during the peak periods at the beginning of each academic term, could adversely affect our business and results of operations.

18. The above statements identified in ¶¶ 16-17 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: 1) that the Company lacked adequate security measures to protect users' data; (2) that the Company lacked the internal controls and procedures to detect unauthorized access to its systems and to its data; (3) that as a result, the Company would incur additional expenses and litigation risks; and (4) that, as

a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

19.     On September 25, 2018, the Company filed a Form 8-K with the SEC, stating in relevant part:

> On September 19, 2018, Chegg learned that on or around April 29, 2018, an unauthorized party gained access to a Company database that hosts user data for chegg.com and certain of the Company's family of brands such as EasyBib. The Company understands that the information that may have been obtained could include a Chegg user's name, email address, shipping address, Chegg username, and hashed Chegg password. The investigation into the incident, which is supported by third-party forensics, is ongoing. To date, the Company understands that no social security numbers or financial information such as users' credit card numbers or bank account information were obtained. The Company expects to start notifying approximately 40 million active and inactive registered users and certain regulatory authorities on September 26, 2018.

20.     On this news, the Company's share price fell $3.91, or approximately 12%, to close at $28.42 per share on September 26, 2018, on unusually heavy trading volume.

### CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired Chegg securities between July 30, 2018 and September 25, 2018, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

22.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Chegg's common stock actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Chegg common stock were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Chegg or its transfer agent and may be

1 notified of the pendency of this action by mail, using the form of notice similar to that customarily 2 used in securities class actions.

3   23.   Plaintiff's claims are typical of the claims of the members of the Class as all 4 members of the Class are similarly affected by Defendants' wrongful conduct in violation of 5 federal law that is complained of herein.

6   24.   Plaintiff will fairly and adequately protect the interests of the members of the Class 7 and has retained counsel competent and experienced in class and securities litigation.

8   25.   Common questions of law and fact exist as to all members of the Class and 9 predominate over any questions solely affecting individual members of the Class. Among the 10 questions of law and fact common to the Class are:

11   (a)   whether the federal securities laws were violated by Defendants' acts as alleged 12 herein;

13   (b)   whether statements made by Defendants to the investing public during the Class 14 Period omitted and/or misrepresented material facts about the business, operations, and prospects 15 of Chegg; and 16

17   (c)   to what extent the members of the Class have sustained damages and the proper 18 measure of damages.

19   26.   A class action is superior to all other available methods for the fair and efficient 20 adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the 21 damages suffered by individual Class members may be relatively small, the expense and burden of 22 individual litigation makes it impossible for members of the Class to individually redress the 23 wrongs done to them. There will be no difficulty in the management of this action as a class 24 action.

25 **UNDISCLOSED ADVERSE FACTS**

26   27.   The market for Chegg's securities was open, well-developed and efficient at all 27 relevant times. As a result of these materially false and/or misleading statements, and/or failures 28 to disclose, Chegg's securities traded at artificially inflated prices during the Class Period.

Plaintiff and other members of the Class purchased or otherwise acquired Chegg's securities relying upon the integrity of the market price of the Company's securities and market information relating to Chegg, and have been damaged thereby.

28. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Chegg's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Chegg's business, operations, and prospects as alleged herein.

29. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Chegg's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## **LOSS CAUSATION**

30. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

31. During the Class Period, Plaintiff and the Class purchased Chegg's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

**SCIENTER ALLEGATIONS**

32. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendant, by virtue of his receipt of information reflecting the true facts regarding Chegg, his control over, and/or receipt and/or modification of Chegg's allegedly materially misleading misstatements and/or his associations with the Company which made them privy to confidential proprietary information concerning Chegg, participated in the fraudulent scheme alleged herein.

**APPLICABILITY OF PRESUMPTION OF RELIANCE
(FRAUD-ON-THE-MARKET DOCTRINE)**

33. The market for Chegg's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Chegg's securities traded at artificially inflated prices during the Class Period. On September 4, 2018, the Company's share price closed at a Class Period high of $32.38 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Chegg's securities and market information relating to Chegg, and have been damaged thereby.

34. During the Class Period, the artificial inflation of Chegg's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Chegg's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Chegg and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company

shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

35. At all relevant times, the market for Chegg's securities was an efficient market for the following reasons, among others:

(a) Chegg shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, Chegg filed periodic public reports with the SEC and/or the NYSE;

(c) Chegg regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Chegg was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

36. As a result of the foregoing, the market for Chegg's securities promptly digested current information regarding Chegg from all publicly available sources and reflected such information in Chegg's share price. Under these circumstances, all purchasers of Chegg's securities during the Class Period suffered similar injury through their purchase of Chegg's securities at artificially inflated prices and a presumption of reliance applies.

37. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to

recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

### NO SAFE HARBOR

38. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Chegg who knew that the statement was false when made.

### FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

39. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

40. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Chegg's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant,

took the actions set forth herein.

41. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Chegg's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

42. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Chegg's financial well-being and prospects, as specified herein.

43. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Chegg's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Chegg and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

44. The Individual Defendant's primary liability and controlling person liability arises from the following facts: (i) the Individual Defendant was a high-level executive and/or director at the Company during the Class Period and member of the Company's management team or had control thereof; (ii) the Individual Defendant by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) the Individual Defendant enjoyed significant personal contact and familiarity with the other

defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) the Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

45. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Chegg's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

46. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Chegg's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Chegg's securities during the Class Period at artificially high prices and were damaged thereby.

47. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems

that Chegg was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Chegg securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

48.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

49.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendant**

50.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

51.     The Individual Defendant acted as a controlling person of Chegg within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendant had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendant was provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, Individual Defendant had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the

1 same.

2     53. As set forth above, Chegg and Individual Defendant each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of his position as controlling person, Individual Defendant is liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: September 27, 2018            **GLANCY PRONGAY & MURRAY LLP**

                                                By: *s/ Robert V. Prongay*
                                                Lionel Z. Glancy
                                                Robert V. Prongay
                                                Lesley F. Portnoy
                                                Charles H. Linehan
                                                1925 Century Park East, Suite 2100
                                                Los Angeles, CA 90067
                                                Telephone:  (310) 201-9150
                                                Facsimile:  (310) 201-9160
                                                Email:  info@glancylaw.com

                                                *Attorneys for Plaintiff*

## GLANCY PRONGAY & MURRAY LLP

**SWORN CERTIFICATION OF PLAINTIFF**
**Chegg, Inc. Securities Litigation**

I, Bhupendra V Shah, certify that:

1. I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase Chegg, Inc., the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Chegg, Inc. during the Class Period set forth in the Complaint are attached in Exhibit A.

5. I have not sought to serve, or served, as a representative party on behalf of a class under the federal security laws during the last three years, except as follows:


6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

*/s/ Bhupendra V Shah/*

Date: September 26 2018

[REDACTED]

I am NOT a current or former employee of Chegg, Inc.
RETURN TO:
Glancy Prongay & Murray LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067

## EXHIBIT A

**Purchases**

| Number of Shares | Date | Price ($) |
| --- | --- | --- |
| 900 | August 17, 2018 | 30.1900000000 |
| 300 | August 20, 2018 | 30.8500000000 |

**Sales**

| Number of Shares | Date | Price ($) |
| --- | --- | --- |
| 400 | September 26, 2018 | 28.3600000000 |